UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| Iowa Interstate R.R. Ltd., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:11-cv-4068-SLD-JAG |
| | ) |
| Prestige Creative Mktg., Inc. a/k/a or d/b/a | ) |
| Prestige Rail Mktg., and Jason M. Johnson, | ) |
| | ) |
| Defendants. | ) |

ORDER

This case involves a contract dispute between Plaintiff Iowa Interstate Railroad, Ltd. ("IAIS"), a Delaware corporation with its principal place of business in Cedar Rapids, Iowa, and co-Defendants Prestige Creative Marketing, Inc., a/k/a or d/b/a Prestige Rail Mktg. ("Prestige"), an Ohio corporation with its principal place of business in New Philadelphia, Ohio, and Jason M. Johnson, a resident of Ohio. The Court has diversity-based jurisdiction pursuant to 28 U.S.C. § 1332.

Presently before the Court are Defendant Johnson's Motion to Dismiss (ECF No. 7) and Plaintiff's Motion to Strike Johnson's Motion to Dismiss (ECF No. 13). For the reasons set forth below, the Court DENIES Plaintiff's Motion to Strike and GRANTS Johnson's Motion to Dismiss. The Court further GRANTS Plaintiff leave to file an amended complaint that includes factual allegations, presuming they exist, that address the inadequacies in the present assertions against Johnson. Plaintiff shall file any such amended complaint within 28 days of this Order.

## I. BACKGROUND

### A. The Complaint

Train Festival 2011, a railroad event that took place in Rock Island, Illinois, in the summer of 2011, was planned and operated by Prestige. In late 2010, Johnson, on behalf of Prestige, contacted IAIS seeking trains and services for the event. Initially, the services IAIS was going to provide were embodied in a formal agreement styled as a "Memorandum of Understanding" ("MOU"). (Compl. ¶ 5, ECF No. 1.) Under the MOU, IAIS would provide train equipment, operating personnel, and other services to the attendees of the event. In return, Prestige agreed to pay IAIS a sum of $151,500 in two separate $75,750 installments, hotel costs for IAIS's crews ($1,423.80), and coal and diesel fuel costs for powering the locomotives ($5,365.08). (Compl., Ex. A.) The MOU expressly states that it is between the corporate entities IAIS and Prestige. (Compl., Ex. A-2 ("This Memo of Understanding is between Iowa Interstate Railroad, hereinafter referred to as IAIS and Prestige Rail Marketing, hereinafter referred to as PRM.").  The MOU also indicates, however, that it was "[p]repared by: Jason Johnson, Prestige Rail Marketing and Mick Burkart, IAIS" and Johnson and Burkart signed the MOU on behalf of Prestige and IAIS, respectively, on November 9, 2010. (Compl., Ex. A-3)

In addition to the MOU, IAIS contends that it provided $11,000 of additional services for the event. IAIS alleges that these services were provided under agreements memorialized in two emails between Johnson (of Prestige) and Mick Burkart (of IAIS) on June 13, 2011, and July 5, 2011. (Compl., Exs. B, C.)

IAIS contends that it performed all of the services it was obligated to perform pursuant to the MOU and two additional *ad hoc* agreements. IAIS admits that Prestige made the initial $75,750 payment required under the MOU, but that the check Prestige tendered to IAIS for a

second payment of $87,000 was declined due to insufficient funds and Prestige has not made any further payments to IAIS.  IAIS therefore seeks damages from both Prestige and/or Johnson for breaching the agreements in the amount of $93,538.88 plus interest, in addition to attorney fees and costs.

### B. The Answer

An Answer to the Complaint was filed on October 3, 2011, at 3:57 p.m.  The Answer's caption indicates it was filed only on behalf of Prestige.  (*See* Answer, ECF No. 6 ("Defendant Prestige Creative Marketing, Inc.'s Answer to Plaintiff's Original Complaint").)  However, the opening sentence of the Answer mentions both Defendants: "NOW COME the Defendants, PRESTIGE CREATIVE MARKETING, INC. ("Prestige" or "Defendant") and Defendant JASON M. JOHNSON, by and through their attorney, Thomas M. Benson of the BENSON LAW OFFICE, for their Answer to Plaintiff's Original Complaint . . . ."  Each paragraph of the Answer also includes separate responses on behalf of both Prestige and Johnson, and the content of each party's responses are substantially different.  Prestige's responses admit many of the allegations, including IAIS's allegation that Prestige "breached the contract and the additional agreements by failing to pay IAIS amounts owed . . . ."  (*See* Compl. ¶ 15; Answer ¶ 15.)  Johnson's responses, on the other hand, simply deny all of IAIS's allegations with a rote response: "Jason M. Johnson denies the allegations in paragraph [#] of Plaintiff's Complaint as such allegations relate to Jason M. Johnson."

### C. The Parties' Motions

Johnson moved to dismiss the Complaint, as it pertains to him as an individual, for failing to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).  (Mot. to Dismiss, ECF No. 7.)  Johnson bases his motion on the assertion that he has no individual liability for the

3

breach of contract and should therefore be dismissed as a named defendant. According to Johnson, the MOU was entered between the corporate entities—IAIS and Prestige—and he was only acting on behalf of Prestige when he signed the contract. IAIS opposes the motion on the ground that the limited liability afforded to corporations does not protect Johnson because Prestige is incorporated in Ohio and is "not authorized to conduct business in the states of Iowa and Illinois." (IAIS's Opp'n to Def.'s Mot. to Dismiss ¶ 1, ECF No. 14.) In support of this "unauthorized entity" argument, IAIS recites incorporation statutes for *domestic corporations* in Illinois and Iowa.

IAIS also seeks to preempt Johnson's Motion to Dismiss on a technicality. IAIS filed a Motion to Strike arguing that the Court should strike Johnson's allegedly untimely Rule 12(b) motion. (IAIS's Mot. to Strike, ECF No. 13.) IAIS asserts that it would be technically improper for the Court to consider Johnson's Motion under Rule 12(b) because it was filed twelve minutes after the Answer. IAIS concedes that it would be within the Court's discretion to treat Johnson's motion as one for judgment on the pleading under Rule 12(c), but asserts that doing so would be improper based on the same arguments set forth in IAIS's opposition to the motion to dismiss (i.e., because Prestige is not an authorized entity in Iowa or Illinois).

II. ANALYSIS

    A. IAIS's Motion to Strike

Rule 12(b) states that defenses, such as for failure to state a claim upon which relief can be granted, "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Under a plain reading of the rule, filing a motion to dismiss after or simultaneously with an answer is technically improper. *See, e.g.*, *Perkins v. Univ. of Ill. at Chicago*, No. 95 C 4320, 1995 WL 680758, at *1 (N.D. Ill. Nov. 14, 1995) ("By filing a motion to dismiss Counts I and II

4

pursuant to Rule 12(b)(6) simultaneously [with] an answer to Count III, defendant violated the requirement that a defendant file a single answer to a complaint and the requirement that a motion to dismiss pursuant to Rule 12 be made before (not after or even at the same time as) pleading.").

Courts generally recognize, however, that striking a motion to dismiss under a rigid reading of the rule would be an unduly harsh result. Instead, such technically flawed motions are commonly construed in a manner that negates the flaw and allows the court to rule on the merits. For instance, the Northern District of Illinois discussed the options available to a Court when presented with a partial answer and simultaneous Rule 12(b)(6) motion:

> Defendant's violation of FRCP 12 presents the court with a choice of at least three courses of action. First, the court could consider the answer filed and the motion to dismiss untimely. The court would then likely construe the untimely motion to dismiss to be a motion for judgment on the pleadings, and so consider the issues it raises. *See* FRCP 12(c), (h)(2). This course, nonetheless, would be highly unsatisfactory. . . . Second, the court could strike both the answer and the motion to dismiss, allowing defendant to determine which way it wishes to proceed. While this course would allow defendant to take the action it intended, it would be wasteful of the time of both the court and counsel. It is unnecessary as well, since the documents filed seem to the court to evince an intent on the part of defendant to move to dismiss . . . . Third, the court therefore will follow the course of striking the answer and treating the motion to dismiss as properly before the court.

*Id.* The Seventh Circuit also recognizes that a court can review a motion styled under Rule 12(b)(6) as a Rule 12(c) motion for judgment on the pleadings when the timing of the motion raises a question as to its compliance with the limits on motions under Rule 12(b):

> Defendants filed a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). However, because Defendants previously filed their answer, the district court correctly construed Defendants' motion as a motion for judgment on the pleadings under Rule 12(c). *See Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 n. 3 (7th Cir.1998).

*Forseth v. Village of Sussex*, 199 F.3d 363, 368 n.6 (7th Cir. 2000). *See also Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) ("We now accept the

overwhelming weight of authority that a motion to dismiss for failure to state a claim . . . that is styled as arising under Rule 12(b) but is filed after the close of pleadings, should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c).")

Ultimately, a court's substantive ruling on an untimely Rule 12(b) motion should not hinge on whether it is construed as a Motion pursuant to 12(b) or as a Motion for Judgment on the Pleadings under Rule 12(c).  Both types of motions are evaluated under similar standards. *See Martino v. W. & S. Fin. Group, No.*, 3:08-CV-308-TS, 2009 WL 3444652, at *3 (N.D. Ind. Oct. 22, 2009) ("The same standard that applies when reviewing motions to dismiss for failure to state a claim under Rule 12(b)(6) applies when reviewing Rule 12(c) motions.") (citing *Pisciotta v. Old Nat'l Bancorp,* 499 F.3d 629, 633 (7th Cir. 2007)).  The only relevant difference is timing:

> We view Rule 12(c) motions much like Rule 12(b) motions to dismiss for failure to state a claim.  Both motions permit a party to request the district court to dispense of the matter at the initial stage of the proceedings. The primary difference between these motions is that a party may file a 12(b) motion before its answer.  "A motion making any of these defenses [12(b)(1)-(7)] shall be made before pleading if a further pleading is permitted."  Fed. R. Civ. P. 12(b).  A party may move to dismiss the claim under Rule 12(c) "[a]fter the pleadings are closed but within such time as not to delay the trial."  Fed. R. Civ. P. 12(c).

*Northern Indiana Gun & Outdoor Shows*, 163 F.3d 449, 452 n.3 (7th Cir. 1998).

Here, the Court believes it would be inappropriate to strike Johnson's motion.  Yes, the motion could be considered technically improper for being brought under Rule 12(b)(6) and filed twelve minutes after the Answer.  But, the Answer's caption did not include reference to Johnson, the Answer included only rote denials of each and every substantive allegation of the Complaint on behalf of Johnson, and the motion to dismiss was filed nearly simultaneously with the Answer.  The Court will not elevate form over substance when Johnson's actions lead to the conclusion that his true intent was to seek dismissal of the charges against him.

6

Additionally, the Court rejects IAIS's arguments that the Court should not treat the motion as one for judgment on the pleadings pursuant to Rule 12(c). As set forth below, IAIS's allegations that Prestige was not authorized to enter into contracts in Iowa or Illinois are not persuasive. The Court therefore concludes, in light of the same standards and legal principles applicable under either rule, that whether the Court evaluates Johnson's motion as one pursuant to Rule 12(b)(6) or Rule 12(c) will not affect resolution of the merits of the motion. However, from a procedural standpoint, the Court finds that it would be most efficient and fair to proceed in the same manner as *Perkins*, 1995 WL 680758, at *1, and to strike the responses on behalf of Johnson from the Answer and evaluate the motion pursuant to Rule 12(b).

### B. Johnson's Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) does not resolve the merits of a particular claim, but rather tests only the sufficiency of the allegations set forth in the complaint. To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The factual allegations in a complaint are accepted as true, but must give "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted). In sum, the plaintiff's allegations must demonstrate that the claim "is plausible, rather than merely speculative." *Tomayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

In ruling on a defendant's motion to dismiss under Rule 12(b)(6), like a motion for judgment on the pleadings under Rule 12(c), the court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). In doing so, the facts set forth in the complaint are viewed "in the light most favorable to the nonmoving party." *GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995). Facts in the complaint that disprove the asserted claim should be considered, and the court need not accept unsupported conclusions of law. *Northern Ind. Gun & Outdoor Shows v. City of South Bend,* 163 F.3d 449, 452 (7th Cir. 1998) (quoting *R.J.R. Serv., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989)); *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1951 (2009) (citing *Twombly*, 550 U.S. 544 (2007)) (conclusory allegations are "not entitled to be assumed true").

In the present case, the limited liability provided to corporate entities appears to shield Johnson from individual liability in this case. The MOU itself expressly states that it is an agreement between corporate entities. (Compl. Ex. A-2 ("This Memo of Understanding is between . . . IAIS and Prestige . . . .").) The MOU indicates that it was prepared, in part, by Johnson and that Johnson signed the agreement on behalf of Prestige. But it does not otherwise provide any indication that Johnson, or any of the other individuals involved in the drafting and execution of the agreement on behalf of the corporate entities, would have personal liability under it. Thus, from a plain reading, the only named Defendant with potential liability under the MOU appears to be Prestige.

The two *ad hoc* email agreements also do not expressly create personal liability for Johnson. The June 13, 2011, email indicates that the requested services were meant for the same Train Festival as the services provided under the MOU and that the insurance coverage for the

event would also cover the additionally requested services. (Compl., Ex. B.) The July 5, 2011, email states that additional costs would be incurred for the described services because the pricing "wasn't included in the original pricing" under the MOU. (Compl., Ex. C.) Accordingly, the emails appear to be addenda to the original MOU between the corporate entities.

IAIS premises its opposition to Johnson's Motion to Dismiss on meritless legal arguments. In conclusory fashion, IAIS contends that Johnson should be individually liable because Prestige, as an Ohio corporation, was not authorized to conduct business in either Iowa or Illinois. IAIS contends that the statutes and case law from both states support its contention that Prestige was an "unauthorized entity." (IAIS's Opp'n to Def.'s Mot. to Dismiss ¶ 1, ECF No. 14.) In support, IAIS cites to 805 ILCS 5/3.20 (Illinois) and I.C.A. Sec. 490.204 (Iowa). But these statutes apply only to *domestic* corporations; they do not apply to a *foreign* corporation like Prestige. Rather, both Illinois and Iowa have separate statutory provisions governing the conduct of such foreign corporations. *See* 805 ILCS 5/1.80 (defining "foreign corporation); 805 IL Statute, Ch. Corporations, Act. 5 Art. (Illinois' statutory provisions regarding "Foreign Corporations"); I.C.A. Sec. 490.140 (defining "foreign corporation"); I.C.A. Title XII, Subtitle 2, Ch. 490, Division XV (Iowa's statutory provisions regarding "Foreign Corporations").

Additionally, it is black letter law that "[a] state's power to require a corporation to qualify is limited by the Commerce Clause of the U.S. Constitution . . . and cannot be imposed on corporations engaged exclusively in interstate commerce." PLIREF-EQUIP § 28.3.2. Likewise, under principles of comity, a corporation created in one state is, with limited exceptions, generally permitted to exercise its corporate powers in another state. *See* 19 CJS Corporations § 970. In recognition of these principles, both Iowa and Illinois, in line with the vast majority of other states, have statutory provisions that explicitly exclude foreign

corporations engaged in interstate commerce from any certification requirements. *See* 805 ILCS 5/1.70(f) (limiting application to the statute commensurate with the limits imposed by the Constitution of the United States); 13 Ill. Law and Prac. Corporations § 365 ("A foreign corporation transacting only interstate business is not carrying on business within Illinois so as to be amenable to licensing and regulatory statutes, because it is within the protection of the Commerce Clause of the Federal Constitution."); I.C.A. Sec. 490.1501 (transacting business in interstate commerce exempted from Iowa certification requirements). *See also Corp. Recruiters Ltd. v. Norwest Financial, Inc.*, 489 N.W.2d 729, 730-31 (Iowa 1992) (Iowa certification requirement does not apply to foreign corporation transacting business using state-to-state communication instruments).

In the context of the present dispute, there is no doubt that Prestige is engaged in interstate commerce. Prestige, an Ohio corporation, contracted with IAIS, a Delaware corporation with its principal place of business in Iowa, for services that were to occur in Illinois. Thus, the parameters of the interactions between the parties implicated at least three separate states. Additionally, the MOU itself was transmitted in a manner that implicates interstate commerce since it was sent through the mail from Iowa to Ohio. (Compl., Ex. A-1.) The *ad hoc* additions to the agreement also implicated interstate commerce because they were formalized by email transmission, which is another instrument of interstate commerce. (Compl., Exs. B-C.) Accordingly, as a foreign corporation engaged in interstate commerce, Prestige had no obligation to comply with the certification requirements of Illinois or Iowa in order to enter agreements in either of those states. IAIS's arguments that Prestige was not an "authorized entity" are therefore without merit.

The only apparent legal grounds by which Johnson could be held personally liable in this matter is under the doctrine of "piercing the corporate veil." The Complaint, however, does not allege any facts to support such an allegation against Johnson. Yet, in the exhibits IAIS attached to the Complaint is a letter from IAIS's counsel to Johnson alleging that "in a matter like this, piercing the corporate veil can be easily done to hold you personally liable for this matter." (Compl., Ex. G-1.) Thus, while there are no facts alleged in the Complaint to support a veil-piercing theory, the Court believes that IAIS should be afforded the opportunity to include any such factual allegations it has that would support veil-piercing in an amended complaint pursuant to Rule 15(a)'s mandate that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

## III. CONCLUSION

While Johnson may have proceeded ambiguously by filing both a motion to dismiss and denials to the Complaint in an Answer, the Court finds that striking the motion would be an unduly harsh and inefficient way to proceed in this case. The Court therefore denies IAIS's Motion to Strike. Since IAIS has not alleged sufficient facts to hold Johnson personally liable for the contractual obligations of Prestige, the Court grants Johnson's Motion to Dismiss, but IAIS shall have 28 days from the date of this Order to file an amended complaint that includes facts to support its allegations that Johnson should be held personally accountable in this case.

Entered this 15th day of June, 2012.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE